UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ANTHONY BONADIES,                                    :
                          Plaintiff,                 :
                                                     :
v.                                                   :          **OPINION AND ORDER**
                                                     :
TOWN OF AMENIA; MICHAEL C.                           :          19 CV 10890 (VB)
SEGELKEN, in his personal and professional           :
capacities; and VICTORIA PEROTTI, in her             :
personal and professional capacities,                :
                          Defendants.                :
--------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Anthony Bonadies brings this action pursuant to 42 U.S.C. §§ 1981 and 1983

against defendants the Town of Amenia (the "Town"), Town Code Enforcement Officer Michael

C. Segelken, and Town Supervisor Victoria Perotti, alleging violations of the First, Fourth, and

Fourteenth Amendments, New York State law, and the Charter of the United Nations ("U.N.

Charter").[1]

        Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6).

(Doc. #13).

        For the following reasons, the motion is GRANTED.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

                                          **BACKGROUND**

        For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-

pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor.  The

---

[1]        Although plaintiff also asserts defendants violated his due process rights in derogation of
the Fifth Amendment, the Fifth Amendment only applies to actions of the federal government.
See Dusenbery v. United States, 534 U.S. 161, 167 (2002).   Plaintiff has not named the United
States or any agent thereof as a defendant in this case.  Accordingly, plaintiff's claims must be
dismissed insofar as they are asserted under the Fifth Amendment.

following factual background is drawn from "the facts alleged in the complaint, . . . documents incorporated by reference in the complaint," and documents upon which the complaint "relies heavily . . . thereby rendering the document[s] integral to the complaint."  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).[2]

I.    Plaintiff's Property and Criminal Proceedings

Plaintiff is the owner of residential property located at 5166 Route 22, Amenia, New York (the "property").  When plaintiff purchased the property, it comprised one residential home.  Over time, plaintiff improved the property with a side addition, and erected five apartments on the property to be used for low-income housing.

On January 2, 2015, non-party John Fenton, a Town Code Enforcement Officer at the time, served plaintiff with two criminal summonses for plaintiff's alleged failure to remedy a Town zoning law violation for converting a structure from an approved use—a two-family dwelling—to a prohibited use—a multi-family dwelling—and a Town code violation for open storage of rubbish and debris.

On March 1, 2016, Town Code Enforcement Officer Segelken served plaintiff with two additional criminal summonses for two Town code violations for building without a building permit and another Town code violation for open storage of rubbish and debris.

On May 7, 2017, following a bench trial conducted by Town Justice Norman Moore, plaintiff was convicted of all five Town code and zoning violations.  At trial, Segelken testified as a witness for the prosecution.

On August 29, 2017, Justice Moore issued a judgment of conviction, which ordered plaintiff to pay several fines and remedy the Town code and zoning law violations by November

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

21, 2017.  That day, Justice Moore and plaintiff executed an order of conditional discharge, which set forth plaintiff's obligations pursuant to the judgment of conviction.  The order of conditional discharge reads:  "I have read and understand these conditions and will abide by them.  I understand that my failure to do so may subject me to further proceedings and revocation of the conditional discharge which may result in my re-sentencing to imprisonment in the Dutchess County Jail."  (Doc. #14 ("Posner Aff.") Ex. E).

On November 21, 2017, Segelken submitted to Justice Moore a statement respecting plaintiff's conditional discharge, in which Segelken noted plaintiff had not corrected any of the Town code or zoning infractions, nor had plaintiff contacted Segelken or the Town's Building Department or Zoning Board to seek variances or permits to remedy the violations.

On November 28, 2017, Justice Moore issued an order of appearance for a determination with respect to plaintiff's alleged violations of the order of conditional discharge.

On December 31, 2018, Justice Moore adjudged plaintiff in willful disobedience of the judgment of conviction and order of conditional discharge.  On January 28, 2019, Justice Moore sentenced plaintiff to thirty days in jail for criminal contempt.

Plaintiff alleges he received this jail sentence after Segelken served him with a notice to appear in court, and also after Segelken prosecuted him "without any corroborating witnesses until [plaintiff] was found in criminal contempt."  (Doc. #1 ("Compl.") ¶ 64).

II.     Plaintiff's Encounters with Segelken

According to plaintiff, Segelken began working for the Town in 2004.  Plaintiff alleges that on some unspecified date in 2004—more than ten years before plaintiff received the first set of criminal summonses from Code Enforcement Officer Fenton—Segelken visited the property to conduct an annual fire inspection, during which Segelken and plaintiff "exchanged

unpleasantries." (Compl. ¶ 59). Plaintiff further alleges that during this interaction, Segelken made "disparaging remarks regarding [plaintiff's] position as an indigenous person and self-classification as a Moor." (Id. ¶ 60).

Plaintiff claims that after the 2004 incident, he received "constant letters" from Segelken, and that at some unspecified time, Segelken posted a "stop work" notice on plaintiff's property after plaintiff had begun construction of a "carport." (Compl. ¶¶ 61–63). Thereafter, according to plaintiff, he received a notice to appear in court.

III.   Plaintiff's Claims

Plaintiff alleges that defendants' "animus" toward him "led them to enforce their laws in a selective manner which is supported by a letter sent to the Town Attorney." (Compl. ¶ 65).[3] Plaintiff claims that as a result, he suffered a loss of personal liberty and use of his property. He brings claims for violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses, the First Amendment, and the U.N. Charter, and claims for malicious abuse of process and prosecution, false arrest, Section 1981 liability, Section 1983 supervisory liability, and a Monell claim against the Town.

---

[3]   Plaintiff's complaint states that this letter, "dated October 9, 2019," is attached as an exhibit to an affidavit plaintiff intended to file contemporaneously with his complaint. (Compl. ¶ 65). Plaintiff filed his complaint on November 30, 2019. Five days later, plaintiff filed an affidavit containing additional allegations and attached to that affidavit a letter, dated October 8, 2019 (not October 9, 2019), from his counsel to Town Attorney Ian Linders. (Doc. #7).

On December 6, 2019, the Court instructed the clerk to strike plaintiff's affidavit as improper pursuant to Federal Rule of Civil Procedure 7. (Doc. #8). Plaintiff did not re-file the letter referenced in his complaint, which was attached to his stricken affidavit, but defendants provided a copy of the letter with their motion to dismiss. (See Posner Aff. Ex. A at ECF 4–6). Accordingly, the Court will consider the October 8, 2019, letter, which is referenced in the complaint.

"ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

4

**DISCUSSION**

I.    <u>Legal Standard</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>. (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

A court assessing a Rule 12(b)(6) motion may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d at 111.  The Court may nevertheless consider a document not incorporated by reference if the complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  <u>Id</u>.  However, "it must be clear on the record that no dispute exists regarding the authenticity or

accuracy of the document." Id. "It must also be clear that there exist no material disputed issues

of fact regarding the relevance of the document." Id.

II.    Judicial Notice

Defendants request the Court take judicial notice of the following documents relating to

plaintiff's property and plaintiff's underlying criminal proceeding:  (i) criminal summonses

setting forth plaintiff's alleged Town zoning and building code violations (Posner Aff. Ex. B);

(ii) Justice Moore's April 6, 2017, decision and order following the bench trial in plaintiff's

criminal case (id. Ex. C); (iii) the judgment of conviction and the order of conditional discharge

in plaintiff's criminal case (id. Exs. D, E); (iv) Segelken's November 21, 2017, letter respecting

plaintiff's non-compliance with the order of conditional discharge (id. Ex. F); (v) Justice

Moore's November 28, 2017, declaration of delinquency and December 31, 2018, decision and

order respecting plaintiff's failure to comply with the judgment of conviction and order of

conditional discharge (id. Exs. G, H); (vi) an order of dismissal of plaintiff's criminal appeal (id.

Ex. I); and (vii) an order dated December 6, 2018, from the Dutchess County Department of

Behavioral and Community Health, concerning the habitability of certain apartments on

plaintiff's property (id. Ex. J).

Plaintiff argues defendants' request "violate[s] a basic rule of civil procedure," and that

defendants ask the Court to consider the above documents only "to bolster" defendants'

arguments for dismissal.  (Doc. #20 ("Pl. Mem.") at 10–11).

A "court may take judicial notice of a document filed in another court not for the truth of

the matters asserted in the other litigation, but rather to establish the fact of such litigation and

related filings." Global Network Commc'ns, Inc. v. City of New York, 458 F. 3d 150, 157 (2d

Cir. 2006).  Moreover, the Court may take judicial notice of documents referenced in, or integral

to, the complaint, even if the documents are not physically attached to the complaint, so long as their authenticity is not contested.  See Smith v. Westchester County, 769 F. Supp. 2d 448, 458 n.7 (S.D.N.Y. 2011).

Here, the Court takes judicial notice of the documents filed in, and concerning, plaintiff's criminal proceeding (Posner Aff. Exs. A–I), as those documents concern and directly relate to the allegations giving rise to plaintiff's claims.  The authenticity of these documents is not contested, and plaintiff raises no credible, material issue of fact as to their relevance.  However, the Court declines to take judicial notice of the December 6, 2018, Dutchess County order respecting the habitability of plaintiff's apartments (id. Ex. J), as this document is not incorporated by reference in the complaint and does not concern plaintiff's underlying criminal proceeding, which is at issue in this lawsuit.

III.    Abandoned Claims

Defendants argue plaintiff has abandoned his claims alleging violations of the First Amendment, the U.N. Charter, and Section 1981.

The Court agrees.

"Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in [his] opposition papers defendants' arguments for dismissing such a claim."  Estate of M.D. by DeCosmo v. New York, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017).  "This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."  Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (collecting cases).  "Application of this proposition is, however, tempered by this Court's discretion."  Id.

A.      First Amendment Claim

Although none of plaintiff's causes of action respect a violation of the First Amendment, plaintiff references the First Amendment several times in his complaint.  For example, plaintiff asserts "[d]efendants' decision to prosecute Plaintiff was based upon Plaintiff's First Amendment-protected expression" (Compl. ¶ 72), and that he "was deprived of his liberty and property and First Amendment rights."  (Id. ¶¶ 110, 112).

In their memorandum in support of dismissal, defendants argue plaintiff fails plausibly to allege a First Amendment claim because the complaint does not mention any protected speech or expression or how defendants' conduct chilled plaintiff's exercise of such activity.  In his opposition, plaintiff neither responds to defendants' First Amendment arguments nor sets forth any arguments supporting the complaint's conclusory allegations respecting his First Amendment rights.

Accordingly, plaintiff has abandoned his claims inasmuch as they respect the First Amendment.

B.      U.N. Charter Claim

None of plaintiff's causes of action concern a violation of the U.N. Charter, although the complaint contains conclusory allegations regarding same.  (See Compl. ¶¶ 1, 3, 18, 26). Notwithstanding, defendants argue plaintiff fails plausibly to state a claim because the U.N. Charter does not confer an individual right to sue.  (See Doc. #15 ("Defs. Mem.") at 19 (citing Shenk v. Social Sec. Admin., 2014 WL 1311406, at *7 (S.D.N.Y. Mar. 28, 2014) (noting there exists no private right of action under the provisions of the U.N. Charter)).  In his opposition, plaintiff does not address this argument.

Accordingly, plaintiff has abandoned any claims respecting the U.N. Charter.

C.      Section 1981 Claim

In his second cause of action, plaintiff combines Fourteenth Amendment substantive due process allegations with allegations concerning Section 1981.  With respect to Section 1981, plaintiff alleges defendants unlawfully impeded his right to make and enforce contracts. Defendants argue plaintiff's complaint contains no allegations plausibly suggesting defendants discriminated against plaintiff on account of his race or ethnicity, or interfered with his ability to make or enforce contracts.  They argue routine code enforcement with respect to code and zoning infractions does not unlawfully infringe a property owner's ability to lawfully utilize and enjoy his real estate.

In his opposition, plaintiff does not contest defendants' argument that he fails plausibly to allege defendants discriminated against him on account of his race or ethnicity, or interfered with his ability to make or enforce contracts.  Rather, plaintiff's opposition focuses only on his substantive due process arguments.

Accordingly, plaintiff has abandoned any Section 1981 claim.

IV.     Equal Protection

Defendants argue plaintiff fails plausibly to state a Fourteenth Amendment equal protection claim under either a selective enforcement or class-of-one theory of liability.

The Court agrees.

A.      Legal Standard

The Constitution's "equal protection clause directs state actors to treat similarly situated people alike."  Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).  "Where, as here, Plaintiff does not claim to be a member of a protected class, he may bring an equal protection claim under one of two theories:  selective enforcement or class of one."  Rankel v. Town of

<u>Somers</u>, 999 F. Supp. 2d 527, 544 (S.D.N.Y. 2014).  "The two are treated (at least formally) as separate claims in the Second Circuit."  <u>Missere v. Gross</u>, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011).

 To allege a selective-enforcement claim, "a plaintiff must plead:  (1) he was 'treated differently from other similarly situated' individuals and (2) 'that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  <u>Rankel v. Town of Somers</u>, 999 F. Supp. 2d at 544 (citing <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 790 (2d Cir. 2007)).  Courts in this circuit have required plaintiffs alleging selective enforcement claims to plausibly allege that the plaintiff and comparators "were similarly situated in all material respects, or that a prudent person, looking objectively at the incidents, would think them roughly equivalent."  <u>Missere v. Gross</u>, 826 F. Supp. 2d at 561.

 "The Second Circuit has guided however that 'mere failure to prosecute other offenders is not a basis for a finding of denial of equal protection.'"  <u>Chase v. Nodine's Smokehouse, Inc.</u>, 360 F. Supp. 3d 98, 116 (D. Conn. 2019) (quoting <u>LaTrieste Rest. v. Village of Port Chester</u>, 188 F.3d 65, 70 (2d Cir. 1999).  This is because "selective prosecution implies that a selection has taken place."  <u>LaTrieste Rest. v. Village of Port Chester</u>, 188 F.3d at 70.  "Thus, in order to show that he/she was selectively treated, a party would need to show that the government entity 'knew of other violations, but declined to prosecute them.'"  <u>Chase v. Nodine's Smokehouse, Inc.</u>, 360 F. Supp. 3d at 117 (quoting <u>LaTrieste Rest. v. Village of Port Chester</u>, 188 F.3d at 70).

 To state "a class-of-one theory, a plaintiff must allege that he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  <u>Rankel v. Town of Somers</u>, 999 F. Supp. 2d at 544 (citing <u>Analytical</u>

Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010)).  "A plaintiff must plead 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'"  Id.  (citing Ruston v. Town Bd. of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010)).  Accordingly, to state a class-of-one claim, a plaintiff must plausibly allege "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake."  Ruston v. Town Bd. of Skaneateles, 610 F.3d at 60.

       B.    Application

Here, plaintiff fails plausibly to allege an equal protection violation.  He asserts "the very essence of this lawsuit is that [he] has been the only tax-paying citizen of Amenia to have been imprisoned for criminal contempt for violations of building permits."  (Pl. Mem. at 8).  In other words, he alleges (i) defendants selectively enforced Town code and zoning laws, and also (ii) that he, unlike any other town resident, was prosecuted and jailed for those violations.  It is true plaintiff's criminal proceeding was initiated because of his failure to comply with certain Town code and zoning laws.  However, plaintiff did not receive a thirty-jail sentence as a result of his failure to comply with Town law.  Rather, plaintiff's thirty-day jail sentence was a direct result of his failure to comply with Justice Moore's order of conditional discharge, which required plaintiff to, among other things, redress the Town code and zoning violations.  Thus, plaintiff's failure to comply with a court order prompted his jail sentence.  Accordingly, plaintiff's allegation that he was imprisoned for violations of Town law is not plausible.

Moreover, although plaintiff alleges he is the only Town resident to have ever been criminally prosecuted for violations of the Town Code, he fails plausibly to allege that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Ruston v. Town Bd. of Skaneateles, 610 F.3d at 60.

Simply, plaintiff fails plausibly to allege that, when he received notices in January 2015 and March 2016 to redress Town code and zoning violations, others similarly situated were treated differently. He alleges that his counsel's October 8, 2019, letter to a Town attorney sets forth sufficient comparator information. (See Compl. ¶ 66) ("The letter . . . provides photographic evidence of numerous properties throughout the Town which have garbage, and debris, scattered across them as if they were licensed to be landfills."). Indeed, the letter states "evidence attached" constitutes a "convincing showing" that plaintiff was treated differently than similarly situated comparators. (See Posner Aff. Ex. A at ECF 4–6).[4] But the letter does not contain any attachments. In other words, the October 2019 letter does not provide any information about other Town properties, or other Town residents who defendants declined to cite or prosecute for Town code and zoning violations despite knowledge of same. Moreover, the October 2019 letter is dated nearly five years after plaintiff received his initial criminal summonses for Town code and zoning violations in January 2015, more than three years after he

---

[4]     This filing is identical to plaintiff's filing that was stricken on December 4, 2019 (Doc. #7), which comprised plaintiff's improper affidavit and plaintiff's counsel's October 8, 2019, letter without attachments.

received additional criminal summonses in March 2016, and more than two years after plaintiff's May 7, 2017, conviction before Justice Moore.

For these reasons, the October 8, 2019, letter falls well short of suggesting the Town ignored other Town code and zoning violations and selectively enforced Town law against plaintiff years earlier.  Indeed, it does not contain any information suggesting plaintiff had been treated differently than others similarly situated in that he, and not others, were either cited or prosecuted for violations of the Town code or zoning law, or that defendants "knew of other violations, but declined to prosecute them." LaTrieste Rest. v. Village of Port Chester, 188 F.3d at 70.

In addition, plaintiff fails plausibly to allege the "differential treatment was based on impermissible considerations . . . or malicious or bad faith intent to injure a person." Rankel v. Town of Somers, 999 F. Supp. 2d at 544.  Indeed, plaintiff claims in conclusory fashion that Segelken exhibited animus in issuing to plaintiff Town code and zoning citations.  Plaintiff's allegations supporting such a claim are that, during an interaction in 2004, Segelken and plaintiff exchanged unpleasantries and Segelken made disparaging comments about plaintiff's ethnicity. Accepting these allegations as true, as the Court must, they nevertheless fail to support a plausible claim that in 2016—twelve years later—Segelken exhibited unlawful animus in serving plaintiff with criminal summonses for violations of the Town code and zoning law.[5]

Plaintiff argues that even if he did not plead facts plausibly suggesting animus or that others were treated differently, defendants' motion to dismiss nevertheless must be denied under a "per se" selective enforcement analysis as reflected in Cahn v. City of Highland Park, 2012

---

[5]    Moreover, a different Code Enforcement Officer, not Segelken, served plaintiff his first set of criminal summonses in January 2015.  This further belies plaintiff's conclusory allegations that Segelken or the other defendants demonstrated animus in enforcing Town laws against plaintiff.

WL 4483480 (N.D. Ill. Sept. 25, 2012), and Geinosky v. City of Chicago, 675 F.3d 743, 748 (7th Cir. 2012).

The Court is not persuaded.

In Geinosky v. City of Chicago, a decision that has no binding effect on this Court, the Seventh Circuit concluded a plaintiff had stated a plausible class-of-one equal protection claim without having to identify similarly situated individuals or allegations that the plaintiff had been treated differently from same.  675 F.3d at 748.  This was because the plaintiff had received twenty-four bogus parking tickets—all of which were dismissed—over the course of one year, from the same police unit, and had to go to court seven times to defend himself against same.  Id. The Seventh Circuit noted that "requiring [the plaintiff] to name a similarly situated person who did not receive twenty-four bogus parking tickets . . . would not help distinguish between ordinary wrongful acts and deliberately discriminatory denials of equal protection."  Id. Accordingly, the circuit concluded that plaintiff's "general allegations that defendants intentionally treated plaintiff differently than others similarly situated is sufficient here, where the alleged facts so clearly suggest harassment by public officials that has no conceivable legitimate purpose."  Id.

And in Cahn v. City of Highland Park, also not binding on this Court, a plaintiff plausibly alleged Town officials irrationally targeted and cited plaintiff, in a spiteful manner, for an alleged fence violation on his property.  2012 WL 4483480, at *4.  The plaintiff plausibly alleged that after his neighbor's complaints about the fence were determined to be unfounded, and inspections regarding same subsequently closed, Town officials—who were friendly with the complaining neighbor—irrationally and repeatedly cited plaintiff for various violations, that were not enforced against other property owners, in attempts to coerce the plaintiff to remove the

fence at issue.  Id. at *3–4.  The court determined the plaintiff successfully met the pleading requirements of a class-of-one equal protection claim "pursuant to the standard advanced in Geinosky v. City of Chicago."  Id. at *3.  In other words, the facts alleged so clearly suggested Town officials targeted the plaintiff with a pattern of harassing behavior.

Here, the facts of Geinosky and Cahn are inapposite.  The complaint is devoid of "alleged facts so clearly suggest[ing] harassment by public officials that has no conceivable legitimate purpose."  Geinosky v. City of Chicago, 675 F.3d at 748.  Plaintiff does not plausibly allege a pattern of harassment or unequal treatment.  Indeed, plaintiff's allegations fail to suggest defendants' enforcement of, and issuance of notices of noncompliance with, the Town code and zoning law, were targeted, irrational, or without a legitimate, governmental purpose.  Unlike the plaintiffs in Geinosky and Cahn, plaintiff fails to suggest he was targeted, either for maintaining debris on his property, or converting buildings on his property from authorized to unauthorized uses, or building on his property without requisite permits.

Rather, plaintiff claims he is the only Town resident that has ever been prosecuted and jailed for such violations.  But, again, plaintiff fails to appreciate the fact that he did not receive a thirty-day jail sentence for having violated Town code or zoning law.  On the contrary, he received a jail sentence for failing to comply with a court order, the same order that provided him several months to correct the code and zoning violations on his property as part of his conditional discharge.

Moreover, plaintiff also fails to appreciate that his thirty-day jail sentence was imposed by a Town Justice, not Segelken or any other defendant in this case.  Indeed, that Segelken issued plaintiff notices of noncompliance with Town code and zoning law and testified at plaintiff's criminal bench trial—all of which occurred years before the imposition of plaintiff's

jail sentence—does not at all plausibly suggest Segelken was responsible for the punishment plaintiff ultimately received.

For the above reasons, plaintiff fails plausibly to allege an actionable equal protection claim, under either a selective enforcement or class-of-one theory of liability.  Accordingly, such claim must be dismissed.

V.    Substantive Due Process

Defendants argue plaintiff fails plausibly to state a substantive due process claim.

The Court agrees.

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective."  Southerland v. City of New York, 680 F.3d 127, 151 (2d Cir. 2011).  To state a substantive due process claim, a plaintiff must allege that the complained-of state action compromised a constitutionally-protected liberty or property right, and the state action that deprived plaintiff of that interest was oppressive or arbitrary.  MC v. Arlington Cent. Sch. Dist., 2012 WL 3020087, at *5 (S.D.N.Y. July 24, 2012).

The allegations must demonstrate more than mere conduct that is incorrect or ill advised.  Cunney v. Bd. of Trs. of Grand View, 660 F.3d 612, 626 (2d Cir. 2011).  Indeed, the plaintiff must plausibly allege he was deprived of a constitutional right by "conduct so egregious, so outrageous, that it may fairly be said to shock to the contemporary conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998); see also Autotech Collision, Inc. v. Inc. Village of Rockville Ctr., 673 F. App'x 71, 73 (2d Cir. 2016) (summary order) ("To pursue a substantive due process claim, plaintiffs must show egregious, outrageous government conduct injurious to an interest implicit in the concept of ordered liberty.").

Here, the complaint contains no plausible allegations suggesting arbitrary, conscience-shocking conduct led to the issuance of plaintiff's criminal summonses, the initiation of his criminal proceeding, or the imposition of his thirty-day jail sentence.  His allegations that defendants unlawfully oppressed his livelihood and right to utilize his property through "purposeful and systemic discrimination" (Compl. ¶ 96), and a "pattern of targeting" (id. ¶ 97), are wholly conclusory.  He alleges he was served with criminal summonses for failures to cure certain Town code and zoning violations on his property and does not deny such violations.  And other than an incident in 2004, during which plaintiff and Segelken allegedly exchanged unpleasantries, plaintiff fails to plead any other allegations supporting his claim that defendants' conduct in enforcing the Town code and zoning law was arbitrary or egregious.

For the above reasons, this claim must be dismissed.

VI.   Malicious Abuse of Process

Defendants argue plaintiff fails plausibly to state a malicious abuse of process claim.

The Court agrees.

A Section 1983 claim for malicious abuse of process is governed by state law.  Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  Under New York law, to state a malicious abuse of process claims, a plaintiff must plausibly allege the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective . . . outside the legitimate ends of the process."  Dowd v. DeMarco, 314 F. Supp. 3d 576, 585 (S.D.N.Y. 2018) (quoting Cook v. Sheldon, 41 F.3d at 80).

"While malicious prosecution concerns the improper issuance of process, the gist of abuse of process is the improper use of process after it is regularly issued."  Cook v. Sheldon, 41

F.3d at 80.  Accordingly, "it is not enough to allege that defendants acted maliciously in bringing the action, because malicious motive alone . . . does not give rise to a cause of action for abuse of process."  Dowd v. DeMarco, 314 F. Supp. 3d at 585.

Here, plaintiff fails plausibly to allege facts suggesting defendants acted maliciously after having served plaintiff with criminal summonses for his failure to comply with Town laws. Defendants did not oversee the criminal proceeding, issue orders in the criminal proceeding, or determine the result of the criminal proceeding.  Indeed, "[t]he only such 'process' identified in the [] complaint is defendants' initiation of the proceedings against him."  See Dowd v. DeMarco, 314 F. Supp. 3d at 585.  That is not enough.  Id.

Accordingly, plaintiff's malicious abuse of process claim must be dismissed.[6]

VII.    Malicious Prosecution

The complaint does not expressly delineate a cause of action for malicious prosecution. However, plaintiff alleges defendants issued process and filed statements in criminal court "to detain and prosecute" plaintiff (Compl. ¶107).  Plaintiff argues "the fact that [he] was the only citizen of the community to ever be imprisoned for violations of The Town Building Code should be deemed sufficient to deny" defendants' motion to dismiss.  (Pl. Mem. at 13).

To the extent plaintiff attempts to plead a malicious prosecution claim, it too fails.

Section 1983 provides a claim for malicious prosecution, the elements of which, like a malicious abuse of process claim, are borrowed from state law.  Cook v. Sheldon, 41 F.3d at 80. Under New York law, to state a malicious prosecution claim, a plaintiff must plausibly allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and

---

[6]      Because plaintiff fails to allege a plausible malicious abuse of process claim, the Court need not address defendants' argument that such claim is untimely.

(4) actual malice as a motivation for defendant's actions." <u>Manganiello v. City of New York</u>, 612 F.3d 149, 161 (2d Cir. 2010).

In addition, "[w]hen raising a malicious prosecution claim under Section 1983, a plaintiff must also show a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." <u>Michell v. City of New York</u>, 841 F.3d 72, 79 (2d Cir. 2016).

Plaintiff fails plausibly to allege a malicious prosecution claim.  First, plaintiff's criminal proceeding was not terminated in his favor.  He was found to have violated several Town code and zoning laws, and, thereafter, he failed to redress those violations and thus received a thirty-day jail sentence for criminal contempt.  Second, plaintiff fails plausibly to allege "actual malice" as a motivation for his criminal prosecution and its eventual disposition.  <u>See</u> <u>Manganiello v. City of New York</u>, 612 F.3d at 161.  Indeed, the first set of criminal summonses he received in January 2015 were issued by non-party John Fenton, the Town Code Enforcement Officer at the time.  Over one year later, in March 2016, Segelken served plaintiff with additional criminal summonses for additional violations of Town law.  Plaintiff offers no plausible allegations suggesting he received the criminal summonses on account of Segelken's animus or discriminatory motive.  An allegedly unfriendly interaction from 2004 fails to provide plausible support to suggest Segelken acted with animus in March 2016 when he, as the Town Code Enforcement Officer, served plaintiff with notices of criminal charges for failure to remedy violations of the Town code.

Moreover, that Segelken was called to testify at plaintiff's criminal trial for violations of the Town law in no way suggests malicious prosecution on the part of Segelken or the other defendants in this case.

Simply, plaintiff's conclusory allegations fail to suggest defendants initiated criminal proceedings against him to deprive him of his personal liberty or property.  For the above reasons, plaintiff's malicious prosecution claim, to the extent one is pleaded, fails.[7]

VIII.   <u>False Arrest</u>

Defendants argue plaintiff fails plausibly to state a false arrest claim.

The Court agrees.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996).  "Under New York law, the elements of false arrest are (1) defendant's intentional, unjustified, and unprivileged confinement of plaintiff, and (2) plaintiff's awareness o the confinement." <u>Rodriguez v. City of New York</u>, 535 F. Supp. 2d 436, 441 (S.D.N.Y. 2008).

As noted above, plaintiff was not arrested or imprisoned at defendants' request, or for violating Town code or zoning laws.  His liberty was not interfered with when he received criminal summonses to answer for his alleged infractions of Town law.  He received a thirty-day jail sentence only after failing to comply with an order of conditional discharge, which provided several months to correct the violations on his property.  Accordingly, plaintiff fails plausibly to allege defendants' conduct intentionally and unjustifiably confined plaintiff.

Accordingly, plaintiff's false arrest claim must be dismissed.[8]

---

[7]     Because plaintiff fails to allege a plausible malicious prosecution claim, the Court need not address defendants' argument that probable cause is a complete defense to such claim.

[8]     Because plaintiff fails to allege a plausible false arrest claim, the Court need not address defendants' argument that such claim is untimely.

IX.     Personal Involvement of Perotti

Defendants argue plaintiff fails plausibly to allege Supervisor Perotti was personally

involved in any deprivation of plaintiff's constitutional rights.

The Court agrees.

To adequately plead a Section 1983 claim, a plaintiff must also "plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  Indeed, "personal involvement of defendants

in alleged constitutional deprivations is a prerequisite to an award of damages under Section

1983."  Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994).

> Supervisor liability under § 1983 can be shown in one or more of the following
> ways:  (1) actual direct participation in the constitutional violation, (2) failure to
> remedy a wrong after being informed through a report or appeal, (3) creation of a
> policy or custom that sanctioned conduct amounting to a constitutional violation,
> or allowing such a policy or custom to continue, (4) grossly negligent supervision
> of subordinates who committed a violation, or (5) failure to act on information
> indicating that unconstitutional acts were occurring.

Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).[9]

Moreover, Section 1983 liability cannot be predicated on a theory of respondeat superior.

See City of Canton v. Harris, 489 U.S. 378, 385 (1989).

Here, plaintiff falls short of pleading any allegations suggesting Supervisor Perotti

directly participated in a constitutional violation, or failed to remedy a wrong after being

informed of a constitutional violation, or created a policy or custom sanctioning conduct

amounting to a constitutional violation, or was grossly negligent in her supervision of

---

[9]     After Ashcroft v. Iqbal, district courts within the Second Circuit have been divided as to
whether claims alleging personal involvement under the second, fourth, and fifth of these factors
remain viable.  See Marom v. City of New York, 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7,
2016) (collecting cases).  The Second Circuit has yet to resolve this dispute.  Id.

subordinates who committed a constitutional violation, or failed to act on information indicating that unconstitutional conduct was occurring.  See Richardson v. Goord, 347 F.3d at 435.  Indeed, plaintiff's factual recitation does not contain even a single allegation specifically referencing Supervisor Perotti or her alleged conduct.

Plaintiff argues he has sufficiently alleged Supervisor Perotti's involvement by enumerating her responsibilities as Town Supervisor and alleging she implemented "policies and practices," and "failed to intervene" in constitutional violations, that harmed plaintiff.  (Pl. Mem. at 14).  But such boilerplate and conclusory allegations do not plausibly suggest Supervisor Perotti's personal involvement, and fail to carry plaintiff's minimal pleading burden.

For the above reasons, plaintiff fails plausibly to plead Supervisor Perotti's personal involvement in an alleged constitutional violation.  Accordingly, plaintiff's claims with respect to Supervisor Perotti must be dismissed.

X.      Monell Claim

Defendants argue plaintiff fails plausibly to state a claim against the Town pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

The Court agrees.

First, plaintiff has not adequately pleaded an underlying violation of his constitutional rights; thus, his Monell claim against the Town must be dismissed.  See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) (noting the district court "was entirely correct" in declining to address plaintiff's Monell claim after finding no underlying constitutional violation). Second, Section 1983 liability cannot be predicated on a theory of respondeat superior.  See City of Canton v. Harris, 489 U.S. at 385.  And third, plaintiff's allegations respecting the Town's Monell liability are entirely conclusory.  That the Town maintains a Building Department and

Zoning Board, and employs a Code Enforcement Officer, in no way plausibly suggests the Town created or endorsed a policy or custom of allowing its departments and employees to infringe on Town residents' constitutional freedoms.

For these reasons, plaintiff's <u>Monell</u> claim fails.

XI.  <u>State Law Claims</u>

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); <u>Kolari v. New York-Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006).

Having dismissed the federal claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims.

**CONCLUSION**

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #13) and close this case.

Dated: August 31, 2020
       White Plains, NY                    SO ORDERED:

                                           Vincent L. Briccetti
                                           United States District Judge